UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                    Case No. 10-cr-30323

v.                                            HONORABLE STEPHEN J. MURPHY, III

CHARLES EARL WATSON,

    Defendant.
    _____/

## ORDER OF DETENTION

This matter comes before the Court on the government's appeal of the order dated August 10, 2010 releasing defendant Charles Earl Watson on bond before trial. The Court heard arguments in open court on the matter the same day, after which the Court took the matter under advisement, stayed the magistrate judge's order releasing Watson, and advised that a written decision would be forthcoming.

The Court has now had a chance to review the entire record, including the full transcript of the detention hearing, the criminal complaint and supporting affidavit, and the Pretrial Services report dated August 9, 2010, and the Court has further considered the arguments of counsel. Based upon this review and the relevant law, the Court will order Watson detained pending trial.

### PERTINENT FACTS

At the detention hearing before Magistrate Judge Virginia Morgan, the government proceeded by proffer, relying on the sworn statements in the complaint affidavit, and the government also offered the live testimony of Dean J. Schuette, a police officer with the Jackson Police Department, who is currently assigned as a Task Force Officer with the

Bureau of Alcohol, Tobacco, and Firearms. On appeal before the Court, the government also relied on the sworn statements in the affidavit and Schuette also testified before the Court. The following facts come from the proffer and testimony, the criminal complaint, and the pretrial services report.

On April 20, 2010, Jackson County Sheriff's Office ("JSCO") deputies and a confidential information conducted a controlled purchase of crack cocaine at 808 Second Street, Jackson, Michigan from a man named Timothy Earnest Lewis. Lewis then left the residence in a red Ford Expedition. JSCO deputies stopped the Explorer and performed an inventory search of the vehicle, which resulted in the discovery of marked bills earlier used in the controlled purchase of the crack. Lewis was arrested and the deputies secured the 808 Second Street residence while they obtained a search warrant for its premises.

After being read his Miranda warnings, Lewis told the officers that Watson was from Detroit and had been at the residence for two to three days, and that Watson had brought a garbage bag full of money to the residence when he arrived. Lewis also stated that he had overheard Watson speaking on the telephone with an unknown person about another person recently being shot in the face.

When the officers executed the search warrant for the premises they found on Watson a quantity of crack cocaine and a large sum of money that included another marked bill used in the controlled purchase. Deputies also located a garbage bag behind a chair in the living room that contained marijuana, heroin, ecstacy, and crack cocaine. On top of the bag were a pair of pants containing Watson's identification and a key to the front door of the residence. Additionally, in the freezer, the deputies found a brown paper bag and a can of Arizona Iced Tea with a secret compartment, both of which contained drugs.

A Kimber .45 caliber semiautomatic pistol, reported stolen out of Brownstown Township, Michigan, was found underneath the couch in the living room area of the residence. The government offered into evidence three photographs of the gun. There appeared to be blood on the gun, although no forensic testing of the substance has confirmed that it is blood.

After being given his Miranda warnings, Watson stated that a friend of his was robbed and shot in the face in Detroit, Michigan. Watson said that he took his friend from to the hospital, took the gun and the garbage bag full of drugs, and brought both to the 808 Second Street address.

Separate from this incident, on or around August 21, 2009, Watson pleaded guilty to delivery/manufacture of marijuana and was sentenced to two years of probation. On April 23, 2010, Judge Robbins of the Wayne County Circuit Court executed a bench warrant for Watson's arrest, citing a charge of probation violation. Specifically, the warrant stated that Watson had failed to remain crime free and engaged in new criminal behavior. The warrant is still active. Watson has no other convictions, though he has many prior arrests.

From the time of his arrest on April 20, 2010, Watson has been detained in Jackson, Michigan on state charges. Once the instant criminal complaint was signed, on April 4, 2010, the state charges were dismissed, though Watson apparently has remained in state custody since that time. He was granted release on bond but he never posted bond.

## DISCUSSION

!. Legal Standards

The Court reviews an appeal of a magistrate judge's order of detention *de novo*. *United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir. 1985); *United States v. Leon*, 766 F.2d 77 (2d Cir. 1985); *see also United States v. Montgomery*, No. 09-20101, 2010 WL

1052339 (E.D. Mich. Mar. 19, 2010) (Cox, J.); *United States v. Koubriti*, No. 01-80778, 2001 WL 1525270, at *5 (E.D. Mich. Oct. 16, 2001) (Rosen, J.) (noting that although the Sixth Circuit has not addressed the appropriate standard of review, district courts within the Sixth Circuit and sister circuits apply a standard of *de novo* review).

Under the Bail Reform Act, 18 U.S.C. § 3142, a defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A judge's finding that the defendant poses a threat to the safety any other person or the community must be "supported by clear and convincing evidence." *Id.* § 3142(f)(2)(B). "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

This default position is modified, however, when the defendant is charged with certain crimes. *Id.* Specifically, when a "judicial officer finds that there is probable cause to believe" that a defendant committed one of the crimes listed in § 3142(e)(3), there is a presumption in favor of detention: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3).

Section 3142(e)(3)'s presumption in favor of detention imposes only a burden of production on the defendant and the government keeps the burden of persuasion. *Id.* This requires the defendant to come forward with evidence that he poses no danger to the community or is a risk of flight. Although the burden is not heavy, the defendant must introduce at least some evidence to rebut the presumption. *Id.*

4

Even when a defendant satisfies his burden of production, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* The presumption is not simply an evidentiary tool designed for courts, but rather reflects Congress's substantive judgment that certain defendants ordinarily should be detained prior to trial. *Id.* To rebut the presumption, therefore, a defendant should "present all the special features of his case that take it outside the congressional paradigm." *Id.* at 946 (internal quotation marks and alternations omitted). It is the government's ultimate burden to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community. *Id.*

II. Analysis

The complaint alleges that Watson possessed 109.66 grams of crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Magistrate Judge Morgan signed the criminal compliant based on a finding of probable cause to believe that Watson engaged in the alleged conduct. The Court agrees with Judge Morgan's determination of probable cause. *See also Stone*, 608 F.3d at 945 ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985)). This finding triggers the presumption of detention under section 3142(e)(3). *See* 18 U.S.C. § 3142(e)(3)(A) (presumption applies regarding offenses under 18 U.S.C. § 801 *et seq* that carry a maximum term of imprisonment of ten years or more); 21 U.S.C. § 841(b)(1)(A)(iii) (offense under 841(a)(1) involving 50 grams or more of a "mixture of substances described in clause (ii) which contains cocaine base" carries maximum penalty of life imprisonment).[1]

---

[1] The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), signed by the President on August 3, 2010, amends section 841(b)(1)(A)(iii) to provide that to carry a maximum sentence of life in prison an offense under section 841(a)(1) must involve 280

"Cocaine base," as used in the statute, means "crack cocaine." *See United States v. Higgins*, 557 F.3d 381, 395 (6th Cir. 2009) (holding that the term "cocaine base" as used in § 841 means "crack cocaine.")

The Court finds that Watson has provided some evidence to rebut the presumption that he would be a danger to the community and is a flight risk. The pretrial services report indicates that Watson has family ties in the area. Though both his parents are deceased and one of his brothers in jail, he has three other siblings who are residents of Detroit. He maintains close contact with his family members. He does not have a passport and has never traveled outside of the United States. He has a place to live if released. While this evidence focuses mainly on Watson's risk of flight rather than on the danger he poses to the community, he has put forth sufficient evidence to at least satisfy his burden of production. *See Stone*, 608 F.3d at 947 (burden of production to rebut presumption of detention is "relatively light").

Even though Watson has satisfied his burden of production, the presumption remains as a factor to be considered by the Court among the others listed in section 3142(g). The government must demonstrate by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Watson's subsequent appearances before the Court and the safety of the community. In considering whether the government has met its burden, the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense ... involves ... a controlled substance;
>
> (2) the weight of the evidence against the person;

---

grams (not 50, as was required prior, to amendment) or more of crack cocaine. The amendment does not apply in this case, however, because the offense occurred prior to the new law's enactment and the new statute was not made retroactive.

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).

The Court takes each factor in turn. First, the nature and circumstances of the offenses alleged are serious. Watson allegedly possessed over 100 grams of crack cocaine and over 450 grams of marijuana. Congress thought it was especially significant if the crime "involves a controlled substance," *see id.* § 3142(g)(1), and there is probable cause to believe that Watson committed such an offense.

In addition, Watson, a felon previously convicted for selling marijuana, allegedly was in possession of a stolen firearm that contained what appeared to be blood smeared on the handle, inside the chamber, and on the barrel. The gun was hidden under a couch and was loaded with seven rounds in the clip. The circumstances surrounding Watson's possession are serious. By his own admission, Watson was at the scene of a crime in which a third party -- perhaps his friend -- was apparently shot in the face with the gun. Watson took the person to the hospital and brought the gun and drugs at issue to the 808 Second Street residence. There is an ongoing investigation of the shooting and there are serious questions surrounding the incident. Accordingly, the nature and circumstances of the offenses weigh in favor of a finding of dangerousness.

7

Second, the weight of the evidence in this case is strong on both counts. This factor goes to the weight of the evidence of dangerousness and risk of flight, not the weight of the evidence of the defendant's guilt. *See Stone*, 608 F.3d at 948. Officers found on Watson's person a quantity of crack cocaine and "large" sum of money that included a marked bill used in the controlled purchase. That a confidential informant did not identify Watson as being in the residence at the time of the purchase does not indicate that he was not involved at all in the sale. The fact that he received money from the purchase is highly relevant to continued sale of drugs, which indicates his dangerousness to the community. In addition, some of Watson's clothing was found draped over the garbage bag, further tying him to the drugs. Finally, and most compellingly, Watson admitted to officers -- after receiving his Miranda warnings -- that he brought the garbage bag full of drugs to the 808 Second Street residence after his friend asked him to, thereby indicating that he was not deterred from the shooting a few days earlier and was determined to continue selling drugs. The large sum of cash that included the marked bill found on Watson is also highly suggestive of his intent to distribute the crack cocaine and thus his continued danger to the community.

The evidence of dangerousness is also strong with respect to the firearm charge. Watson is a felon and admitted to the officers that he brought the firearm to the 808 Second Street residence after obtaining it from a friend in Detroit. This is not a simple felon in possession case, but rather appears to be related to a more dangerous incident involving a potentially fatal shooting of a third party in which Watson was somehow involved. The fact that the gun was loaded and found in a home containing a significant amount of drugs is also indicative of dangerousness. Accordingly, the second factor also weighs in favor of dangerousness.

Moving on to the third factor, Watson's history and characteristics weigh slightly in favor of dangerousness. No testimony was offered regarding Watson's general character. The report from pretial services, however, states that Watson is mentally and physically healthy, that he denies any drug use and consented to submit to drug testing, though none was performed due to time constraints. It further states that he is single and has lived in Michigan his entire life. He has resided at his current address for approximately four years and shares it with a woman. He has no children. His parents are deceased and one brother is in jail. He has close ties with his siblings. Watson has been unemployed since December 2009, before which time he had been employed since 2001 with the same employer. He has no significant assets or liabilities and no current source of income. He has been in state custody since April 2010.

Watson's criminal history, though not extensive, is significant. As the Court stated at the hearing, if the government wishes to rely on the criminal history factor in demonstrating risk of flight and dangerousness, it must rely on *convictions*, not arrests. In the Court's view, prior arrests for charges that are later dropped are not suggestive of criminal history. Watson does, however, have one conviction for delivery/manufacture of marijuana from 2007 for which he was placed on probation.

Congress considers it significant if the defendant was on probation at the time of the current offense. *See* 18 U.S.C. § 3142(g)(3)(B). Watson allegedly committed the firearm and drug offenses, while he was serving a two-year term of probation in state court after pleading guilty to delivery/manufacture of marijuana. In fact, he violated the terms of his probation by failing to remain crime free when he was arrested on April 20, 2010 on the drug and gun charges by state authorities. In addition, there is a warrant for Watson's

arrest for his failure to appear at Detroit's 36th District Court on what appears to be a traffic court hearing.

Considering Watson's lack of employment and other financial resources, his criminal history of drug-related offenses, and the fact that he was serving probation and violated that probation by failing to remain crime free for two years, as well as the fact that he has an outstanding warrant for his failure to appear in on a traffic violation, the third factor weighs in favor of dangerousness and risk of flight.

Finally, with respect to the nature and seriousness of the danger to the community posed by Watson's release, the Court finds that this factor weighs in favor of detention. The Court has extreme hesitation with letting a defendant who was involved in a potentially fatal shooting back into the community. Without knowing further the circumstances of this shooting the Court finds that there exists no condition or combination of conditions that will reasonably assure the safety of the community. Specifically, the Court is concerned with the safety of Watson himself, as well as any persons who may have been part of the shooting incident that placed Watson's friend in the hospital.

The pretrial services report concedes that Watson poses a risk of nonappearance and that due to his criminal history he poses a danger to the community were he released, but concludes that requiring that he report regularly, restricting his travel to the state of Michigan, requiring that he submit to drug testing, and prohibiting him from possessing firearms of other dangerous weapons and drugs, along with a $10,000 unsecured bond would alleviate any concerns. The Court respectfully disagrees.

The Magistrate Judge voiced concerns over the time in which Watson had already been detained by state authorities by the time of his detention hearing, but the Court finds this to be of little significance here. Rule 5 of the Federal Rule of Criminal Procedure

requires that the defendant appear before a judge without delay. Fed. R. Crim. P. 5(a)(1). The warrant in this case was issued on August 4, 2010 and the defendant appeared before the Court on August 10, 2010, after a reasonable period of time. In addition, Watson had the opportunity to be released on bond from state custody, but either chose not to or was unable to.

## CONCLUSION AND ORDER

The Court finds that given the weight of the section 3142(g) factors in favor of dangerousness and risk of flight in addition to the fact that there is a statutory presumption with respect to the drug offense, the government has met its burden of demonstrating that there exist no conditions or combination of conditions that would reasonably assure that Watson would not pose a danger to the community or not appear were the Court to release him. Accordingly, Watson shall be detained before trial.

**WHEREFORE**, it is hereby **ORDERED** that Defendant be **DETAINED** before trial.

**SO ORDERED.**

                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: August 12, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 12, 2010, by electronic and/or ordinary mail.

                                        Alissa Greer
                                        Case Manager